David **TOURGEMAN**, Plaintiff

v.

**COLLINS FINANCIAL SERVICES, INC., (d/b/a/ Precision Recovery Analytics, Inc.), a Texas Corporation; Collins Financial Services USA, Inc. (d/b/a Precision Recovery Analytics International, Inc.); Paragon Way, Inc., a Texas Corporation; Nelson & Kennard, a California Partnership, Dell Financial Services, L.P., a Delaware Limited Partnership , Defendants.**

Case No.: 08-CV-1392 CAB (NLS)

United States District Court, S.D. California.

Signed 06/16/2016

Brett M. Weaver, Frank J. Johnson, Jr.,
Johnson & Weaver, LLP, Daniel Peter

Murphy, Law Offices of Daniel P. Murphy, Derek J. Wilson, Pettit Kohn Ingrassia and Lutz, Keith M. Cochran, Fitzgerald Knaier, LLP, San Diego, CA, Francis A. Bottini, Bottini & Bottini, Inc., La Jolla, CA, for Plaintiff.

Paragon Way, Inc., Austin, TX, pro se.

Collins Financial Services USA, Inc., Austin, TX, pro se.

## ORDER RE: ARTICLE III STANDING

Hon. Cathy Ann Bencivengo, United States District Judge

On May 18, 2016, Defendant Nelson & Kennard requested the Court hold a hearing to discuss the impact of the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), on the scope and timing of the upcoming trial, which is currently scheduled to begin on July 18, 2016. [Doc. No. 457.] The Court received briefing on the subject and a hearing was held on June 6, 2016. [Doc. Nos. 460, 461.]

 In *Spokeo*, the Supreme Court clarified that the injury-in-fact requirement for Article III standing requires a plaintiff to show that he/she "suffered an invasion of a legally protected interest that is 'concrete and particularized' and "actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (citations omitted). To establish particularization the injury "must affect the plaintiff in a personal and individual way." *Id.* For an injury to be concrete it "must be '*de facto*'; that is, it must actually exist." *Id.* Intangible injuries can nevertheless be concrete and while the history and judgment of Congress play important roles when determining whether an intangible harm constitutes an injury in fact, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement

whenever a statute grants a person a statutory right and purports to authorize the person to sue to vindicate that right." *Id.* at 1549. An allegation of a bare procedural violation, "divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Id.*

Pre-*Spokeo*, the Ninth Circuit held that Nelson & Kennard committed a material violation of the Fair Debt Collection Practices Act ("FDCPA") and also found Tourgeman had standing to bring this class action under the Act. The Court reasoned that "the injury he claims to have suffered was the violation of his right not to be the target of misleading debt collection communications. The alleged violation of this statutory right ... constitutes a cognizable injury under Article III." *Tourgeman v. Collins Financial Services, Inc.*, 755 F.3d 1109, 1116 (9th Cir.2014). The Ninth Circuit however did not address the concreteness of Tourgeman's injury. *Spokeo*, 136 S.Ct. at 1548 (the independent requirement of concrete injury must be addressed).

Following *Spokeo*, this Court re-examines the record to determine if the particular procedural violations Plaintiff alleges entail a degree of injury sufficient to meet the concreteness requirement. The Court will first address Tourgeman's standing in relation to the letter sent by Nelson & Kennard before turning to the complaint drafted by Nelson & Kennard and filed against Tourgeman in California state court.

### 1. Nelson & Kennard Letter

Nelson & Kennard mailed a letter addressed to Tourgeman informing him that the firm's client, Collins Financial Services, had instructed them to take action to recover the balances Tourgeman owed them. The letter erroneously identified

Tourgeman's original creditor as American Investment Bank, N.A., when, in actuality, CIT Online Bank originated the loan. Tourgeman alleged that the misidentification in the letter violated Section 1692(e) of the FDCPA. 15 U.S.C. § 1692(e)(1) (violation based on the false representation of the character, amount, or legal status of any debt). Tourgeman also alleged a second violation related to the Nelson & Kennard letter, arguing that the lawyer who signed the Nelson & Kennard letter was not "meaningfully involved" in the evaluation of his case.[1] 15 U.S.C. § 1692(e)(3) (violation based on the false representation or implication that any individual is an attorney or that any communication is from an attorney). Tourgeman seeks only statutory damages "conceding that he suffered no pecuniary loss as a result of the defendants' conduct." *Tourgeman*, 755 F.3d at 1114.

The Ninth Circuit citing *Robins v. Spokeo*, the decision the Supreme Court subsequently reversed, reasoned that "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Tourgeman*, 755 F.3d at 1115 *quoting Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir.2014). The Court explained that Tourgeman had claimed a cognizable injury under Article III by claiming that the injury he suffered was the violation of his right not to be the target of misleading debt collection communications. *Tourgeman*, 755 F.3d at 1116. The Court concluded that Tourgeman had constitutional standing to pursue his claim because "[t]he alleged violation of Tourgeman's statutory rights stems solely from the defendants having mailed to him their collection letters, and that injury would be redressed by an award of statutory dam-

ages, which the FDCPA makes available to prevailing customers." *Tourgeman*, 755 F.3d at 1118; *see* 15 U.S.C. § 1692k(a)(2). The bare allegation of a statutory violation however does not satisfy the Article III requirement that a plaintiff demonstrate actual harm to establish standing. *Spokeo*, 136 S.Ct. at 1547 (first element of standing requires plaintiff must have suffered an injury in fact).

▪ In order to have Article III standing, as the Supreme Court's decision in *Spokeo* clarified, Tourgeman needs to do more than just point to a statutory violation, he needs to show an actual injury. It is, however, undisputed that Tourgeman did not receive the letter directed at him at the time it was sent. The Ninth Circuit specifically noted that "Tourgeman could not have suffered any pecuniary loss or mental distress as a result of a letter that he did not encounter until months after it was sent—when related litigation was underway." *Tourgeman*, 755 F.3d at 1116. In response to Nelson & Kennard's argument that a consumer who has never received the offending communication has suffered no injury in fact, Tourgeman countered "that a violation of the FDCPA 'in and of itself [ ] confers Article III standing'" and did not point to any instances of actual harm. *Tourgeman*, 755 F.3d at 1114. *Spokeo* confirms that merely asserting a statutory violation that results in no actual injury is not sufficient to confer Article III standing.

Tourgeman did not receive the letter, and did not even become aware of it until litigation was underway, months after it was mailed, and he admittedly suffered neither pecuniary loss nor mental distress related to it. Plaintiff argued that the defendant's act of sending the letter alone,

---

1. The Ninth Circuit did not decided the Section 1692(e)(3) claim regarding the allegation that there was not meaningful attorney in-volvement because it had already concluded there was a violation of the FDCPA.

because it contained inaccurate material information, created a concrete risk that Tourgeman might have acted to his detriment in response because the erroneous information could have confused him. Had Tourgeman actually received the letter this potential risk, even if it did not result in detrimental actions on the part of the plaintiff, could suffice to demonstrate Article III standing. (*See* Section 2, *infra*.) Having never received the communication, until it surfaced in litigation, that potential risk never materialized with regard to plaintiff. The determination that the error in the letter violated the FDCPA established a bare statutory violation. The fact that the plaintiff was completely unaware of the letter until it was discovered in litigation, is fatal to Tourgeman's requirement that he demonstrate he had concrete harm resulting from the violation. A risk of harm that could have hypothetically been caused by a letter that was never received is too conjectural to be concrete.[2] Accordingly, the Court finds that Tourgeman lacks standing to pursue his claims regarding the Nelson & Kennard letter.

### 2. State Court Complaint Filed by Nelson & Kennard

 After receiving no response to the letters, Nelson & Kennard filed a complaint on behalf of Collins in San Diego County Superior Court. Like the letter before it, the complaint erroneously identified Tourgeman's original creditor as American Investment Bank, N.A., instead of CIT Online Bank. The complaint was delivered to Tourgeman's father, who then transmitted it to Tourgeman in Mexico. "Tourgeman retained counsel, and Nelson & Kennard eventually elected to dismiss the action." *Tourgeman*, 755 F.3d at 1113. The Ninth Circuit found that because Nelson & Kennard had transmitted the complaint containing erroneous information to Tourgeman they had violated the FDCPA. *Tourgeman*, 755 F.3d at 1123.

In contrast to the letter, Tourgeman knew about the state court complaint and, upon receiving it, engaged counsel. The incorrect information contained in the complaint could have affected the litigation strategy that Tourgeman and his lawyer chose to pursue, could have potentially lead to lost opportunities to settle the debt, and could have exposed Tourgeman to the possibility a default judgment. *Tourgeman*, 755 F.3d at 1123. These scenarios are all examples of actual harm that Tourgeman was at risk of facing because of the inaccuracies in the complaint he received, therefore the concreteness requirement for Article III standing has been satisfied. Accordingly, the Court finds that Tourgeman has standing to pursue his claim regarding the state court complaint.

### 3. Conclusion

For the reasons set forth above, the Court finds that Tourgeman lacks Article III standing to pursue the FDCPA claims, 15 U.S.C. § 1692(e)(1) & (3), related to the Nelson & Kennard Letter. The Court **HEREBY ORDERS** the Nelson & Kennard Letter claims **DISMISSED**. Further, the Court finds that Tourgeman has Arti-

---

**2.** The Ninth Circuit concluded that the error in the letter could be material to a hypothetical "least sophisticated" debtor, therefore Tourgeman had standing to bring a lawsuit solely based on the defendant's conduct that had no actual impact on him. *Tourgeman*, 755 F.3d at 1118. Similar to the circumstances in *Spokeo*, this analysis is incomplete as it did not address the requirement that a plaintiff demonstrate actual injury to have Article III standing. *See Spokeo*, 136 S.Ct. at 1548–50 (plaintiff's allegation of an inaccurate report under the Fair Credit Reporting Act that violates his right's under that statute does not alone establish the plaintiff's Article III standing).

cle III standing to pursue his FDCPA claim, 15 U.S.C. § 1692(e)(1), regarding the complaint Nelson & Kennard filed in state court. This case will proceed to trial on the state court complaint claim only. The parties are to abide by the schedule and procedures laid out in the February 22, 2016 Order Setting Trial and Pretrial Dates and Procedures [Doc. No. 455] and the February 23, 2016 Pretrial Order [Doc. No. 456].

**IT IS SO ORDERED.**